## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**THE WESTERN AND SOUTHERN**
**LIFE INSURANCE COMPANY**
**BENEFITS COMMITTEE,**

**Case No. 1:23-cv-609**

      **Plaintiff,**

**JUDGE DOUGLAS R. COLE**

   **v.**

**JENNIFER JENKINS, *et al.*,**

   **Defendants.**

### OPINION AND ORDER

The genesis of this dispute is a contest over the proper beneficiary of a $118,700 life insurance policy issued by Plaintiff The Western and Southern Life Insurance Company Benefits Committee (W&S). But who is entitled to the proceeds is not currently before the Court. Rather, the Court must address some predicate questions: Has W&S properly filed an interpleader action, such that it may deposit the life insurance proceeds with the Court and be dismissed with prejudice? If it has, is W&S entitled to the reasonable costs and fees it incurred in doing so? And finally, if so, how much?

The parties do not contest the first—they agree that W&S properly interpleaded both Defendants Jennifer Jenkins and Kelly Blanton[1] as potential beneficiaries, that W&S should be ordered to deposit the proceeds with the Court, and that it should be dismissed with prejudice from the suit. The Court agrees, too.

---

[1] The Court will refer to Kelly Blanton as Kelly, to avoid confusion with her father, Harold Blanton, who is the policy owner.

But the parties disagree about whether W&S may recover its reasonable fees and costs for filing this suit and what constitute "reasonable" measures of both. On these issues, the Court does not fully agree with either party. W&S is correct that caselaw supports awarding W&S its reasonable fees and costs. But the Court finds aspects of the requested award here unreasonable, especially in light of how much it would dissipate what is already a limited fund. So, while the Court will award some fees and costs to W&S, it declines to award the full measure that W&S seeks.

Accordingly, as explained further below, the Court **GRANTS IN PART AND DENIES IN PART** W&S's Motion (1) for Leave to Deposit Funds with the Court; (2) for Interpleader; (3) for Injunction; (4) for Dismissal with Prejudice; and (5) for Reasonable Costs and Fees (Doc. 17).

## BACKGROUND

Before his death, Harold R. Blanton, a district sales manager at the Western and Southern Life Insurance Company, sought life insurance coverage as part of his employee benefits package—a policy currently valued at $118,700. (Doc. 1 ¶¶ 4, 9, #2–3; Doc. 9 ¶ 9, #38; Doc. 13 ¶ 9, #50). Blanton at first designated his daughter, Kelly, as the intended beneficiary of the policy on August 27, 2019. (Doc. 1 ¶ 10, #3; Doc. 1-1; Doc. 9 ¶ 10, #38; Doc. 13 ¶ 10, #50). On May 17, 2022, though, he appears to have executed a separate beneficiary designation form purporting to change the designated beneficiary to his caregiver, Jenkins. (Doc. 1 ¶ 11, #3; Doc. 1-2; Doc. 9 ¶ 11, #38). Then, in May 2023, a state probate court declared Blanton incompetent and appointed his daughter Kelly as his guardian, which gave her the authority to make

financial decisions on his behalf. (Doc. 1 ¶¶ 12–13, 15, #3–4; Doc. 9 ¶¶ 12–13, 15, #39; Doc. 13 ¶¶ 12–13, 15, #50). On June 9, 2023, during the time Kelly was authorized to act as the guardian of Blanton and his estate, Blanton appears to have executed another beneficiary designation form, which again listed Kelly as the sole beneficiary of the life insurance policy—a result in line with his August 2019 designation but contrary to his May 2022 designation. (Doc. 1 ¶ 14, #4; Doc. 1-3; Doc. 13 ¶ 14, #50). Blanton passed away shortly thereafter on July 19, 2023. (Doc. 1 ¶ 16, #4; Doc. 9 ¶ 16, #39; Doc. 13 ¶ 16, #51).

Following Blanton's passing, W&S sought to establish the proper beneficiary of his life insurance policy. Kelly filed a claim form on July 27, 2023. (Doc. 1 ¶ 17, #4; Doc. 1-4). That same day, W&S contacted Jenkins to determine whether she intended to claim any part of the benefits, which she did on August 9, 2023. (Doc. 1 ¶¶ 18–19, #4; Docs. 1-5, 1-6). Having received two competing claims to the proceeds and having decided that it lacked the authority to resolve those competing claims, W&S informed both Kelly and Jenkins that unless they managed to resolve the matter between them by September 25, 2023, W&S would be forced to file an interpleader action. (Doc. 1 ¶¶ 20–22, #4–5; Doc. 1-7). As no resolution was obtained, W&S filed this Federal Rule of Civil Procedure 22 interpleader action on September 26, 2023. (Doc. 1). W&S invoked the Court's federal question jurisdiction because Blanton's life insurance policy was issued pursuant to his employer's retirement benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA). (Doc. 1 ¶¶ 4, 6, #2

(alleging that the action was filed to enforce the terms of an ERISA plan under § 502(a)(3)(B) of ERISA)).

W&S then set about serving the two interpleader Defendants. It sought waivers of service from both, but neither responded. (Doc. 17-1 ¶ 13, #103). So W&S requested an issuance of summons for Jenkins; service was executed four days later. (Docs.4, 6). Service on Kelly, in contrast, posed additional problems. W&S represents that when it sought to serve Kelly in Ohio at her last known location, it learned she had left the country with no forwarding address. (Doc. 17-1 ¶ 13, #103). After a second attempt to obtain a waiver of service went unanswered, W&S hired outside counsel and a private investigator in England, which resulted in its finally serving Kelly in London on December 23, 2023. (Doc. 12; Doc. 17-1 ¶ 13, #103).

Following Defendants' answering the Complaint, (Docs. 9, 13), the parties filed a Rule 26(f) report and attended the Rule 16 conference held on February 13, 2024. (Doc. 14; 2/13/24 Min. Entry). At this conference, W&S's counsel informed the Court that W&S intended to file the instant motion to extricate itself from the suit and to leave the interpleader Defendants to duke it out over the policy proceeds (or at least those portions of the proceeds remaining after its fee request, as discussed below). W&S's counsel further explained that its delay in moving for dismissal stemmed from the parties' reaching an impasse over an agreed-upon award of fees and costs to W&S for bringing the suit. It admitted this delay was partially caused by the fact that Defendants were not given an accounting (redacted or otherwise) of the hours W&S's counsel spent on the action. (*See* Doc. 14, #60; 2/13/24 Min. Entry). W&S's counsel

4

also informed the Court on that call that it intended to seek an award of over $20,000 in fees and costs—more than one-sixth of the fund. At the Court's suggestion, W&S's counsel agreed to provide Defendants an accounting of their hours to allow the parties to try another round of negotiations over the proper fee award to avoid further dissipation of the limited fund. (2/13/24 Min. Entry). Those negotiations also ultimately bore no fruit. (3/7/24 Not. Order).

So W&S filed its pending motion—now requesting $32,465.73 in fees and costs (some 27% of the fund). (Doc. 17, #90). The Court held a conference with the parties on March 20, 2024, to discuss the motion, to ensure that Defendants had sufficient information from the redacted timesheets W&S had provided to respond to W&S's motion, (*see id.* at #97 n.9), and to have W&S send the unredacted invoices for the Court to consider when adjudicating the pending motion (which its counsel ultimately did). (*See* 3/20/24 Min. Entry). Defendants jointly responded contesting both whether W&S merited any award and the reasonableness of W&S's request. (Doc. 18, #153–56). W&S thereafter replied. (Doc. 22). So the motion is ripe for review.

## LAW AND ANALYSIS

W&S seeks interpleader relief pursuant to Federal Rule of Civil Procedure 22, which authorizes "[p]ersons with claims that may expose a plaintiff to double or multiple liability [to] be joined as defendants and required to interplead." This procedural mechanism "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."

5

7 Wright & Miller, Fed. Prac. & Proc. Civ. § 1704 (3d ed. 2023). The Sixth Circuit has explained that if interpleader is properly invoked, a district court may discharge the disinterested stakeholder currently holding the disputed funds or property once he deposits said monies or property with the court. *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641–42 (6th Cir. 2007). But such an order must be limited to discharging the disinterested stakeholder from liability to the extent that it protects the stakeholder only from *competing* claims against the single fund *Id.* at 643–44 (holding that potential damages claims against the stakeholder for damage sustained to the property while in the stakeholder's custody were not meaningfully subject to competing claims such that it fell outside the ambit of an interpleader action). In other words, interpleader relief must be limited to the basis for invoking the mechanism. *Id.*

No party contests that interpleader relief is warranted here. (Doc. 17; Doc. 18, #152). The Court agrees.

As noted, ERISA governs this dispute given Blanton's life insurance policy was issued under an ERISA benefits package offered by W&S. (Doc. 1 ¶¶ 6, 9, #2–3). And W&S has statutory standing to sue, under § 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B), as it is the fiduciary with respect to Blanton's policy and it is seeking equitable interpleader relief to enforce the terms of his policy. *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 417–18 (6th Cir. 1997). So the Court has federal question jurisdiction here. 28 U.S.C. § 1331.

Beyond that, the Court finds that this case presents a quintessential example of a dispute justifying an interpleader. W&S holds the funds of a life insurance policy as a fiduciary for the insured's beneficiary. (*See* Doc. 1 ¶¶ 7–9, #3). But which Defendant is the proper beneficiary is uncertain: there are competing claims made manifest by the various designation-of-beneficiary forms Blanton purportedly executed, which may or may not be enforceable given the state probate court's finding him incompetent. (*Id.* ¶¶ 10–15, #3–4; Docs. 1-1 to -4, 1-6). As W&S claims no interest in the funds, (Doc. 17, #88), it is a disinterested stakeholder who faces potential double liability were it to pay the wrong beneficiary—a hornbook fact pattern for which interpleader gives relief. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 n.15, 534 (1967) (noting that the modern interpleader device was "envisioned" as a mechanism to resolve a dispute in which "an insurer [was] faced with conflicting but mutually exclusive claims to a policy"). So W&S's motion is well-taken inasmuch as it requests interpleader relief. Accordingly, the Court will permit W&S to deposit the disputed funds with the Court, dismiss it from this case with prejudice, and enjoin Defendants from prosecuting further claims against W&S related to these funds.

But that leaves the two disputed questions. Is W&S entitled to an award of fees and costs? And if so, how much? Let's take each in turn.

## A.    W&S Is Entitled to an Award of Reasonable Fees and Costs

As to whether W&S is entitled to an award of reasonable fees and costs, Sixth Circuit caselaw makes clear that the answer is yes. "An interpleading party is entitled to recover [reasonable] costs and attorney's fees when it is (1) a disinterested

stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into the court, and (4) has sought a discharge from liability." *Holmes v. Artists Rts. Enf't Corp.*, 148 F. App'x 252, 259 (6th Cir. 2005). W&S satisfies each prong. It does not claim an interest in the funds, (Doc. 17, #88), recognizes that it must pay one or the other Defendant such funds under the policy as both are potential beneficiaries, (*see id.* at #88–89), and has moved to deposit these funds with the Court and to obtain a dismissal from this suit, (*id.* at #81–82). So an award is merited.

Defendants object, (Doc. 18, #153), pointing to cases from this district that have constructed an exception to this test when the "conflicting claims to proceeds [] arise[] in the normal course of business." *Life Ins. Co. of N. Am. v. Bond*, No. 1:11-cv-146, 2013 WL 12178133, at *8–*9 (S.D. Ohio Feb. 5, 2013) (chalking this up as "simply part of [an insurer's] cost of doing business" (citation omitted)). While this exception has some intuitive appeal, it appears to contravene the Sixth Circuit's pronouncement on the matter.[2] And, even were that not the case, the Court is unconvinced the incentives inherent to insurance markets completely justify it as a policy matter.

Let's start with the more important of those—Sixth Circuit precedent. That court has made clear that the "interpleading party is *entitled* to recover costs and

---

[2] The Court takes occasion to reject (again) the commonly-asserted-but-nonetheless-mistaken assumption Defendants make in their briefing, (*see* Doc. 18, #153): there is no 'law of the district court.' *See Washington v. City of Cincinnati*, No. 1:23-cv-230, 2024 WL 474403, at *5 n.7 (S.D. Ohio Feb. 7, 2024). Other district courts' decisions are not binding—only persuasive. *Id.* And to the extent their decisions are unreasoned; conflict with binding, superior authority; or otherwise lack persuasive legal analysis justifying their holdings, a district court may reject such caselaw. *See Lovelo v. Clermont Cnty. Sheriff's Off.*, No. 1:23-cv-114, 2023 WL 8828008, at *3–*4 (S.D. Ohio Dec. 21, 2023).

attorney's fees" when it meets all four prongs of the applicable test (as is true here) and that "[t]he *only* limiting principle is reasonableness."[3] *Holmes*, 148 F. App'x at 259 (emphases added). That does not appear to admit of the exception on which Defendants seek to rely here.

Against that backdrop, the caselaw to which Defendants allude—which has denied insurers recovery on normal-course-of-doing-business grounds—seems to ground that denial in a conclusion that insurers are not truly "disinterested stakeholders" as interpleader plaintiffs, and thus do not meet the first prong of the Sixth Circuit's test. *Bond*, 2013 WL 12178133, at *8–*9. The Court is not convinced. In the interpleader context, a "disinterested stakeholder" merely refers to any stakeholder who holds no claim to the disputed funds. It is used in contrast to the phrase "interested stakeholder," which refers to a stakeholder who *does* have a claim

---

[3] While the Sixth Circuit decision upon which the Court relies here was unpublished and therefore not strictly binding, the Court finds that this statement of the law governs for two reasons. First, it is the only Sixth Circuit opinion directly setting forth the test governing a district court's award of fees and costs to an interpleader plaintiff. *Cf. First Tr. Corp. v. Bryant*, 410 F.3d 842, 852–56 (6th Cir. 2005) (rejecting an award of fees and costs to an interpleader plaintiff as inequitable because the interpleader plaintiff was not disinterested and engaged in bad faith and vexatious litigation behavior, but not setting forth a specific test to govern when such awards are permissible in interpleader actions). And second, the Sixth Circuit's test is drawn directly from the weight of circuit court authority that has confronted this question and provided guidance to lower courts. *Holmes*, 148 F. App'x at 259 (adopting the test set forth in *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989)); *accord Sun Life Assurance Co. of Can. v. Sampson*, 556 F.3d 6, 8–9 (1st Cir. 2009); *Metro. Life Ins. Co. v. Kubichek*, 83 F. App'x 425, 431 (3d Cir. 2003); *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999); *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 195 (9th Cir. 1962); *but see Aaron v. Mahl*, 550 F.3d 659, 667 (7th Cir. 2008) (adopting the "normal course of business" exception). The consistent support for this test therefore lends credence to the legally binding force of *Holmes*. So, for these reasons, and absent further guidance from that court, this Court will hew closely to the Sixth Circuit's pronouncement in *Holmes* of the test governing when interpleader plaintiffs are entitled to an award of reasonable fees and costs.

to the fund or who otherwise seeks to advocate for a specific outcome (and therefore presumably would not have a strong argument for why he should be extricated from the suit). *Am. Heritage Life Ins. Co. v. Baker*, No. 3:18-cv-2178, 2019 WL 6341636, at *2 (N.D. Ohio Nov. 27, 2019) ("[A] disinterested stakeholder is a party without an interest in the ultimate disposition of the funds."); *Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plan v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000) (holding that an interpleader plaintiff may not recover fees and costs incurred "in litigating the merits of the adverse claimants' positions" because he "is supposed to be disinterested"); *cf. First Tr. Corp. v. Bryant*, 410 F.3d 842, 852–55 (6th Cir. 2005) (distinguishing between the concepts of disinterested stakeholder and claimant in the interpleader context). So insurers like W&S that disclaim any interest in the disputed policy fall within the ambit of the term "disinterested stakeholder."

The cases going the other way treat insurers as "interested parties" because "the filing of the interpleader action immunizes [them] from further liability under the contested policy." *Bond*, 2013 WL 12178133, at *9. But if that theory works, it would appear to apply equally to *all* interpleader plaintiffs; after all, the central purpose of the interpleader vehicle is to allow parties to absolve themselves of the possibility of multiple liability arising from their possession of disputed funds or property. Fed. R. Civ. P. 22(a) (authorizing interpleader for "plaintiffs [who face] double or multiple liability," which thereby means they have an interest in avoiding such inconsistent liability through a court order dismissing them from the suit with prejudice); *accord Baker*, 2019 WL 6341636, at *2. So as to interpleader actions, there

would be no such thing as a disinterested party if that theory were correct, which means there would never be any fee recovery under the *Holmes* test.

Nor can this understanding of the term "disinterested stakeholder" be squared with the Sixth Circuit's rule requiring the interpleader plaintiff to show that he was *both* a "disinterested stakeholder" *and* that he "sought a discharge from liability" to obtain an award of fees and costs. *Holmes*, 148 F. App'x at 259. If an interpleader plaintiff's seeking and obtaining a release from liability renders him an interested stakeholder—as Defendants' caselaw implies—then, as a matter of basic logic, no interpleader plaintiff could ever satisfy both the "disinterested stakeholder" and "discharge from liability" prongs at the same time. Anyone who received the latter would not qualify as the former. Again, that implies no award of fees and costs could ever be awarded in an interpleader action. Assuredly, the Sixth Circuit did not intend to pen a test that was at war with itself, as Defendants' caselaw would require.

In reality, the exception that cases like *Bond* have created appears to be grounded not so much in Sixth Circuit precedent, as in a policy argument—that interpleader insurers should not receive interpleader awards because filing such suits is just a "cost of doing business" as an insurer. *Bond*, 2019 WL 6341636, at *2–*3 (collecting cases rejecting fee awards in insurer contexts, which all rely on this argument). But to this argument, the Court offers two responses. First, such a policy argument is not a reason to discard clear Sixth Circuit precedent, *see supra* note 3, which holds that "[t]he only limiting principle [for these awards] is reasonableness."

*Holmes*, 148 F. App'x at 259. Second, even if one were to rely on policy considerations, the Court is not so sure that such arguments cut clearly against all fee awards.

To expand a bit on the latter point, consider that to remain in business, insurers must collect enough in premiums or other revenues to cover benefit payments plus the insurers' operating costs. These costs include the costs associated with processing policy payouts. One example is the costs of interpleader actions when proper beneficiaries are unclear. If insurers cannot recover the costs of such actions, they must build those costs into policy premiums, thereby spreading those costs among all policyholders. *Dates v. HSBC*, No. 1:24-cv-81, 2024 WL 860918, at *8–*9 (S.D. Ohio Feb. 29, 2024) (describing similar market forces in the mortgage context in which the costs of drawn-out foreclosure actions are passed onto debtors through higher interest rates). But imagine a given interpleader action arises from a policyholder's taking insufficient care with his beneficiary designations. Providing the insurer recovery for its interpleader costs for the resulting action acts as a sort of a "tax" on that specific policyholder, as it decreases the net payout of the policy proceeds by the amount of the insurer's interpleader costs. On this account, contrary to the suggestion in cases like *Bond*, cost-shifting in interpleader actions may advance an admirable goal. The "tax" means that it is those policyholders who cause such costs to arise who bear them (rather than all policyholders). And that, in turn, provides an incentive for policyholders to take greater care with beneficiary designations, which thereby reduces the need for interpleader actions overall.

12

On the other hand, it may be unfair to characterize interpleaders as always (or even typically) arising from policyholder shortcomings. Inherent in insurance (and particularly life insurance) is the reality that many are incentivized to make claims on policies even if they are not proper beneficiaries.[4] And to *Bond*'s point, in that sense, the likelihood that an insurer needs to obtain judicial resolution of competing claims is something known to the insurer up front. The price of filing these interpleader mechanisms could be characterized as a de minimis overhead cost that the insurer could price into policies—a form of protection for insureds against unforeseen difficulties that arise when an insurer attempts to pay out under their policies. In other words, the life insurance policy is in a sense bundled with an interpleader insurance policy. And on that account, insurers, which aggregate the risk of an interpleader action across thousands of policyholders, can better predict how often judicial proceedings are necessary. That, in turn, may make them the more efficient cost bearer as compared to a particular policyholder, especially in those cases where the insured is largely blameless for the administrative difficulties (e.g., if a contest by the avowed beneficiaries is precipitated by one of the claimants making a spurious claim under the policy).

In short, on the question whether insurers should recover fees *at all*, differing considerations cut both ways. That said, however one views the question of insurer

---

[4] One need only call to mind the long history of insurance fraud, or the self-evident competing interests of spouses, children, and others in consanguinity with insureds that has spawned the complex world of probate, *see* 95 *Corpus Juris Secundum*, *Wills* § 462 (2024) ("The overarching purpose of probate is to [] marshal the assets and liabilities of a decedent with the aim of paying any legitimate debts and distributing what's left in accordance with the wishes of that person as expressed in a properly executed will.").

interpleader cost recovery generally, an *unrestricted* right for insurers to obtain an award of costs and fees raises yet further concerns. If that were the rule, insurers would have little reason to initiate interpleaders in the most efficient manner possible. Additional legal research before filing a complaint, for example, would in a sense inure to the benefit of the insurer (or at least to the insurer's counsel), at the expense of the policy beneficiaries. Moreover, a blanket entitlement to insurer cost recovery from policy proceeds may also create poor incentives for potential beneficiaries who are antagonistic to one another. A beneficiary who realizes up front he is likely to lose may engage in spiteful litigation behavior simply to drive up costs and to dissipate the policy proceeds available to the "correct" beneficiary.

Perhaps not surprisingly then, those courts that allow fee recovery for insurers in interpleader actions have also imposed limitations on that principle. As a historical matter, the award of insurer costs (including attorney's fees) for interpleader actions has its roots in the courts' equitable powers over such actions. *First Tr.*, 410 F.3d at 856. Reflecting these equitable underpinnings, courts have recognized that a claimant's bad faith may justify taxing a fee award against only that vexatious claimant and not against the interpleaded funds. *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1498 (11th Cir. 1986) (explaining that taxing an award of costs and fees for the interpleader plaintiff against one of the claimant must be supported by record evidence of bad faith or other "conduct [that] justifies doing so"); *see generally Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 195 (9th Cir. 1962) (explaining that district courts "ha[ve] [the] discretion to decide whether or not

14

to assess" an interpleader award against "the fund," "the losing claimants," or "among the claimants"). So, to the extent that there is a risk for bad behavior by the beneficiaries, the law provides some means for courts to ameliorate such concerns.

Likewise, and reflecting similar equitable concerns, the law does not permit insurers to make unreasonable demands for fees. The touchstone for the analysis about how much an insurer is entitled to recover in costs and fees remains "reasonableness," *Holmes*, 148 F. App'x at 259—an issue to which the Court turns in the next section. *See infra* Part B. Reasonableness thus acts as a shield against insurers' unnecessarily multiplying the litigation, thereby ensuring the court can police vexatious behavior that improperly depletes the disputed funds.

Putting all that together, were the Court free to construct a rule from whole cloth, the Court would first need to weigh, on the one hand, the intuitive notion that insurers are better positioned to predict how often interpleaders will occur against, on the other hand, the various incentives that may arise when policyholders cross-subsidize through higher premiums at least some of the insurers' costs that arise in cases requiring judicial intervention. That issue does not strike the Court as one easy to resolve. Nor, in any event, have the parties here provided the information the Court would need to unravel that knot.

Luckily, the Court need not do so, as the Sixth Circuit's test is clear. Disinterested interpleader plaintiffs who concede liability and seek to deposit the disputed property with the Court and to be discharged from further responsibility are "entitled" to some amount of fees and costs. *Holmes*, 148 F. App'x at 259. And clarity

15

in the legal rule governing this issue has benefits of its own. As noted above, insurers can "price" either rule (recovery or not) into premiums. But they can do so only if the rule is clear.

In short, the Court declines to depart from *Holmes*. And, as also explained above, W&S, who desires to leave Jenkins and Kelly to litigate their respective entitlements to the policy proceeds, plainly meets that standard. Especially given the importance of a clear legal rule, the competing caselaw that attempts to import an exception (not endorsed by the Sixth Circuit) into this test whenever an interpleader action is simply "the cost of doing business" fails to persuade this Court to jettison that rule. *Baker*, 2019 WL 6341636, at *3 ("conclud[ing] that whether the costs arise in the ordinary course of business is a valid consideration, but it does not justify a categorical bar on insurance companies receiving costs and fees associated with interpleader actions"). So the Court concludes that W&S is entitled to some award as it meets all four prongs of the *Holmes* test. 148 F. App'x at 259.

## B. W&S's Requested Award Is Unreasonable and Will Be Reduced

That W&S merits an award does not resolve the matter, though, as the Court also must ensure that the award it orders is *reasonable. Holmes*, 148 F. App'x at 259. This is where W&S's motion runs into some trouble. W&S's counsel seeks an award of $32,465.73 in fees and costs ($29,675.35 in fees and $2,790.38 in costs, $2,086.69 of which relate to serving Kelly in London). (Doc. 17-1, #102). As described below, the Court concludes that a portion of this request is unreasonable.

16

"The traditional test for determining attorneys['] fees in an interpleader action is less rigorous than the more elaborate factors used to consider fee awards in other contexts."[5] *Sun Life Assurance Co. of Can. v. Chan's Est.*, No. C-03-2205, 2003 WL 22227881, at *3 (N.D. Cal. Sept. 22, 2003). In this context, the Court must consider the complexity of the case and whether the interpleader plaintiff acted with diligence or engaged in dilatory tactics. Wright & Miller, *supra*, § 1719.

Here, these factors point to a significant reduction of the claimed award amount. This is a straightforward case that should not have required extensive effort on W&S's part. The two potential claimants to the life insurance policy proceeds at issue could be identified by a quick review of the designation of beneficiary forms—of

---

[5] W&S erroneously claims its asserted award amount merits a presumption of reasonableness because it believes its lodestar calculation is in all respects reasonable. (Doc. 22, #253–54). But for the presumption to attach, W&S must prove "that the number of hours and the rate claims are [both] reasonable." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008). And as that is a legal question left to the discretion of the district court, *Holmes*, 148 F. App'x at 259, W&S cannot stipulate to its own reasonableness, (Doc. 22, #254–55). *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002) ("Parties may not stipulate to the legal conclusions to be reached by the court." (cleaned up)). To the extent that W&S claims the award it seeks is reasonable because other district courts have awarded similar amounts, (Doc. 17, #92–93, 97–98; Docs. 17-2 to -8; Docs. 22-2 to -6), the Court rejects this argument for three reasons. First, those holdings are not binding on this Court. *See supra* note 2. Second, the Court, without spending much energy in researching the issue, can find a similar weight of authority in which courts reduced claimed awards as unreasonable in line with the Court's determination today. *E.g.*, *Sun Life Assurance Co. of Can. v. Chan's Est.*, No. C-03-2205, 2003 WL 22227881, at *3 n.1 (N.D. Cal. Sept. 22, 2003) (collecting cases). And third, W&S must establish that in the given case its behavior (i.e., the number of hours expended) was reasonable *for the given* case. *See Imwalle*, 515 F.3d at 552. As a result, the fees awarded in other cases—dependent on the circumstances of those cases (many of which were by agreed orders, unlike the opposed motion currently before the Court, (*e.g.*, Doc. 17-4, 17-5, 17-8))—are helpful but only as cross-checks because they cannot and do not serve as substitutes for W&S's explaining why *its* behavior *here* is reasonable as measured against the complexity of *this case*. *Cf. Hall v. Cullinan*, No. 1:20-cv-918, 2024 U.S. Dist. LEXIS 31344, at *11 (S.D. Ohio Feb. 23, 2024) (rejecting a party's reliance on other cases to support its request that the court enter a preliminary injunction when that party had failed to point to evidence in the record in that case justifying such relief).

which there are only three. (Docs. 1-1 to -3). The Complaint contains a mere 26 paragraphs of allegations and is 6 pages long. (Doc. 1). Moreover, W&S readily acknowledges that it has filed similar interpleader actions in the past and that its current counsel has personally handled such matters. (Doc. 17, #93–94; Docs. 17-2 to -8; Doc. 22, #255; Docs. 22-2, 22-3). Given W&S and its attorneys are no strangers to such cases, they presumably have form complaints for such instances that they can quickly modify for use here. Against that backdrop, the Court questions why 43 hours were expended to draft the Complaint and to contact the listed beneficiaries (by email) to see if they could settle their dispute.

True, questions of jurisdiction can certainly raise thorny issues that require more preparatory caselaw research before drafting a complaint. Interpleaders involving insurance would typically be state matters, but here ERISA provided a jurisdictional hook. That said, to the extent that W&S's counsel's hours can be attributed to such questions, it cannot justify more than an hour or two of research. For starters, as an insurer, interpleader actions are W&S's bread and butter. So such jurisdictional issues are likely frequently recurring and thus previously researched— in other words, counsel did not need to step outside of their comfort zone to determine that W&S could properly invoke federal jurisdiction here. And importantly, a twenty-five-year-old Sixth Circuit case directly on point disposes of this jurisdictional question in one fell swoop. *Marsh*, 119 F.3d at 417–18, 418 n.2.

Beyond that, the service-of-process issues here admittedly added to the costs applicable to the mine-run of interpleader cases insurers prosecute. Namely, the

failure of both Jenkins and Kelly to waive service—and the resulting need for W&S to utilize foreign process servers in London—reasonably required legal research and added costs an insurer would not normally expend. (Doc. 17-1 ¶ 13, #103). But W&S's invoices suggest only 6.2 attorney-hours (and around $2,086.69 in costs, (*id.* ¶ 6, #102)) were dedicated to such issues. So that does little to support the roughly $32,000 fee request here.

Moreover, these facts taken together further undercut W&S's attempt also to recover fees incurred following Defendants' entrance into this suit. W&S points to the parties' inability to finalize an agreed order dismissing W&S from the suit as a principal reason for incurring more fees. But that inability, and W&S's subsequent motion practice, largely stemmed from W&S's counsel's demanding the entire (unreasonable) amount of fees and costs it incurred in filing the lawsuit and joining Defendants to the suit (some $20,000). (*See* Doc. 14, #60). The Court is not inclined to award the additional fees occasioned by that activity. *First Tr.*, 410 F.3d at 854 (holding that there would be "considerable inequity [in] extracting from [the prevailing claimant's] benefits [the interpleader plaintiff's] attorney's fees that were related to virtually the entire proceedings in th[e] case—fees that [the interpleader plaintiff] jacked up with numerous [frivolous] arguments"); *cf. Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976) (noting that when an interpleader-plaintiff insurer's actions are "improvident, vexatious, or otherwise improper," they may support an award of fees *to the claimant*). The Court therefore will not add to the award the remaining 36.1 hours (or the 13.1 hours of fees W&S's counsel incurred

after his affidavit in support of its motion was drafted but which are nonetheless listed in the invoices sent to the Court).

Having reviewed the invoices, the Court finds that a fee award of $5,750 is reasonable. This approximates a reasonable amount of time to research the caselaw governing federal jurisdiction over interpleader actions, to draft, and then to file a routine interpleader complaint, along with the just over 6 hours counsel spent on the foreign summons issues, were such time billed at the lowest rate listed in W&S's counsel's affidavit. (Doc. 17-1 ¶ 4, #102). The Court finds that this fee award most accurately reflects the fact that (1) this suit is in its nascency[6] and is lacking in complexity, and that (2) W&S is sophisticated in interpleader matters, but that (3) there were fees reasonably incurred to analyze the unique foreign service issue that arose. As for costs, the Court finds that W&S's full requested amount of $2,790.38 is reasonable given $2,086.69 of it stems from the additional expenses needed to serve Kelly in England. Accordingly, the Court finds that a reasonable award of fees and costs here totals to $8,540.38.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** W&S's Motion (1) for Leave to Deposit Funds with the Court; (2) for Interpleader; (3) for

---

[6] The Court takes a moment to reject W&S's assertion that the fees it requests are reasonable because spread out "[o]ver the approximately seven[-]month period since the inception of this dispute, [the 85.3 requested hours] amount[] to under two 8[-]hour days' work per month." (Doc. 22, #255). The problem with this argument is that it ignores that all that has happened during that seven-month period is the filing of a complaint, service of process, and two telephone status conferences. That collection of activities does not call for two eight-hour days every month.

Injunction; (4) for Dismissal with Prejudice; and (5) for Reasonable Costs and Fees (Doc. 17). More specifically, the Court **GRANTS** W&S leave to deposit the funds from Harold R. Blanton's life insurance policy issued under the Western & Southern Financial Group Retiree Health Plan into the registry of the Court. And the Court **AWARDS** W&S **reasonable attorneys' fees in the amount of $5,750 and reasonable costs in the amount of $2,790.38**.

As a result, the Court **ORDERS** W&S to deposit into the registry of the Court the disputed funds **in the amount of $118,700 plus interest accrued through the date of this Opinion and Order, less the fees-and-costs the Court awards in this Order in the amount of $8,540.38**. The Court further **ORDERS** the Clerk to accept and to deposit into the registry of the Court said funds. As those funds meet the IRS definition of a "disputed ownership fund" (DOF), they shall be held in interest-bearing Government Account Series securities via the Court Registry Investment System (CRIS) administered by the Administrative Office of the United States Courts until the Court enters a final judgment in this action. The Court further **ORDERS** that the Clerk promptly and properly invest those funds into the CRIS Disputed Ownership Fund. Income generated from the fund investments will be reduced by an annualized 20 basis points on assets on deposit for funds held in the DOF, for the management of investments in the CRIS. According to the Court's Miscellaneous Fee Schedule, the CRIS fee is assessed from interest earnings to the pool before a pro rata distribution of earnings is made to court cases.

Upon depositing said funds, W&S is deemed **DISMISSED** from this action **WITH PREJUDICE**. Further, upon the deposit of those funds and the dismissal of W&S, the Court **ENJOINS** Jennifer Jenkins and Kelly Blanton from instituting or prosecuting any action in state or federal court or elsewhere against W&S related to Harold R. Blanton's life insurance policy issued under the Western & Southern Financial Group Retiree Health Plan or the proceeds thereof.

      **SO ORDERED.**

May 13, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**